

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------- X

IN RE CENTERLINE HOLDING CO.
SECURITIES LITIGATION

------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/5/08

**MEMORANDUM
OPINION AND ORDER**

**08 Civ. 505   (SAS)
08 Civ. 1026 (SAS)
08 Civ. 1158 (SAS)
08 Civ. 1458 (SAS)
08 Civ. 1593 (SAS)
08 Civ. 1902 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.     INTRODUCTION

In this federal securities class action against Centerline Holding Co.

("Centerline"), several groups of plaintiffs have filed motions to be appointed lead

plaintiff.  For the reasons discussed below, the Centerline Investor Group is

appointed lead plaintiff group, these actions are consolidated, and certain

derivative actions are coordinated for pre-trial purposes.

## II.    BACKGROUND

### A.    Facts[1]

Centerline, a full-service real estate finance company, provides

---

[1]     The facts in this section are taken from the Complaints and are
presumed true for purposes of this motion.

capital for real estate development and packages investment products for retail and institutional investors. As of third quarter 2006, Centerline held a substantial portfolio of tax-exempt first mortgage bonds that generated more than half of Centerline's revenue (the "Bond Portfolio").[2] Through 2006, Centerline shares had typically paid substantial dividends.

On December 5, 2006, Centerline's officers made a presentation to investors that included discussion of Centerline's "blueprint for growth" and continued expansion strategy.[3] On March 12, 2007, Centerline issued a press release announcing Centerline's financial results for fourth-quarter and full-year 2006. This release emphasized growth in the Bond Portfolio and stated Centerline's belief that it would continue to pay dividends at the expected rate.[4]

But the press release did not disclose that Centerline was negotiating the sale of the Bond Portfolio to the Federal Home Loan Mortgage Corporation ("Freddie Mac").[5] This sale was not disclosed until a press release on December 28, 2007, which revealed that Centerline was substantially reducing its annual

---

[2]    *See* Complaint ¶ 7, *Quill v. Centerline Holding Co.*, No. 08 Civ. 1902 (S.D.N.Y. filed Feb. 26, 2008) ("Quill Compl.").

[3]    *Id.* ¶¶ 27, 29, 30.

[4]    *See id.* ¶¶ 31, 40.

[5]    *See id.* ¶ 58.

dividend and had entered into a transaction with a company owned by certain

Centerline officers that involved the issuance of high-dividend preferred shares in

exchange for financing.[6]  Centerline observed that the sale of the Bond Portfolio

had been planned for "close to a year."[7]  Following this announcement, the price

of Centerline shares fell substantially and shareholders filed several securities

actions (the "Securities Actions") and various derivative actions (the "Derivative

Actions") in this Court, New York State Supreme Court, and the Delaware

Chancery Court.

### B.    Procedure

There are three groups of plaintiffs contending for appointment as

lead plaintiff.[8]  One such group is the Burns Group, which maintains that the

relevant class period is December 5, 2006 through December 28, 2007.  The Burns

Group alleges substantial losses as a result of Centerline's fraudulent actions.

Another is the "Centerline Investor Group," which has the most

significant financial interest in the litigation if the class period is defined as March

---

[6]      *See id.* ¶¶ 58, 59, 64, 65, 71.

[7]      Complaint ¶ 10, *Goldstein v. Centerline Holding Co.*, No. 08 Civ. 505
(S.D.N.Y. filed Jan. 18, 2008) ("Goldstein Compl.").

[8]      Five groups originally filed motions to be declared lead plaintiff.
Two of those groups have subsequently withdrawn from consideration.

3

12, 2007 through December 28, 2007. By certain measures, the Centerline

Investor Group has the largest financial interest in the litigation even in the longer

class period urged by the Burns Group.[9]

The third group is the Goldenberg Group. The Goldenberg Group

concedes that its financial interest is smaller than that of the other two groups, but

argue that groups (such as those) with no pre-existing connection should not be

permitted to be lead plaintiff.[10]

The parties ask the Court to consolidate the Securities Actions. The

Goldenberg Group also asks the Court to consolidate the Derivative Actions with

the Securities Actions.

## III.    LEGAL STANDARD

In determining which plaintiff to appoint as lead plaintiff, the Private

---

[9]    The Centerline Investor Group has purchased the most shares, net, of the various groups. *See* Memorandum of Law in Further Support of the Motion of the Centerline Investor Group for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel and in Opposition to the Competing Motions at 7 (observing that the Centerline Investor Group has purchased 136,289 shares, net, while the Burns Group has net purchases of 70,984 shares).

[10]    *See* Memorandum of Law of Roslyn Goldenberg, Mitchell Goldenberg, Jane Goldenberg, Michael Goldenberg and Lisa Goldenberg in Opposition to Competing Motions for Appointment as Lead Plaintiff at 2.

4

Securities Litigation Reform Act ("PSLRA") sets forth a required procedure.[11]
The lead plaintiff should be the plaintiff "most capable of adequately representing
the interests of class members."[12]  The PSLRA requires that the "most adequate
plaintiff" be determined by a two-step competitive process.[13]

      The first step establishes as presumptive lead plaintiff the "person or
group of persons" who meet(s) the following three criteria:  (1) the candidate must
have "filed the complaint or made a motion in response to a notice;"[14] (2) the
candidate must have "the largest financial interest in the relief sought by the
class,"[15] and (3) the candidate must "otherwise satisf[y] the requirements of Rule
23 of the Federal Rules of Civil Procedure."[16]

      Once the presumptive lead plaintiff has been designated, the court
conducts a second inquiry in which members of the class have the opportunity to
rebut the chosen lead plaintiff's presumptive status.  In order to rebut the

---

[11]    *See* 15 U.S.C. § 78u-4(a)(3)(B).

[12]    *Id.* § 78u-4(a)(3)(B)(i).

[13]    *See id.* § 78u-4(a)(3)(B)(iii).

[14]    *Id.* § 78u-4(a)(3)(B)(iii)(I)(aa).

[15]    *Id.* § 78u-4(a)(3)(B)(iii)(I)(bb).

[16]    *Id.* § 78u-4(a)(3)(B)(iii)(I)(cc).

designation, class members must prove either that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."[17] If the presumptive lead plaintiff is disqualified on these grounds, the candidate's position is forfeited and the court returns to the first phase to determine a new presumptive lead plaintiff. The process repeats itself until a candidate succeeds in both the first and second phases of inquiry. The lead plaintiff determination does not depend on the court's judgment of which party would be best lead plaintiff for the class, but rather which candidate fulfills the requirements of the PSLRA.[18]

The lead plaintiff need not be an individual, but can comprise several investors.[19] However, some questions have arisen as to whether a group of plaintiffs can be appointed lead plaintiffs if the members of the group have come

---

[17]    *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa), (bb).

[18]    *See In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) ("While the words 'most capable' seem to suggest that the district court will engage in a wide-ranging comparison to determine which plaintiff is best suited to represent the class, the statute defines the term much more narrowly.").

[19]    *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) (appointing a group of three individual investors as lead plaintiff).

together solely for the purposes of the litigation. The PSLRA does not define

what constitutes an appropriate candidate. The PSLRA states that the court must

"appoint as lead plaintiff the member or members of the purported plaintiff class

that the court determines to be most capable of adequately representing the

interests of class members" but the Act does not specify whether the "members"

must be related in some fashion in order to qualify as an appropriate lead plaintiff

group.[20] I have held elsewhere that

> a group of unrelated investors should not be considered as
> lead plaintiff when that group would displace the
> institutional investor preferred by the PSLRA. But where
> aggregation would not displace an institutional investor as
> presumptive lead plaintiff based on the amount of losses
> sustained, a small group of unrelated investors may serve
> as lead plaintiff, assuming they meet the other necessary
> requirements.[21]

I see no reason to deviate from that determination here.

---

[20]    15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added).

[21]    *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98-99 (S.D.N.Y. 2005).
*Accord Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416, 2007 WL 4526532, at
*10-11 (S.D.N.Y. Dec. 21, 2007) (quoting *eSpeed, Inc.*). *See generally In re Star
Gas Sec. Litig.*, No. 04 Civ. 1766, 2005 WL 818617, at *5 (D. Conn. Apr. 8, 2005)
("The majority of courts considering the issue . . . allow[] a group of unrelated
investors to serve as lead plaintiffs when it would be most beneficial to the class
under the circumstances of a given case.").

## IV.    DISCUSSION

### A.    Consolidation

I find that the Securities Actions are based on a common set of operative facts. Litigation of these actions will require resolution of common questions of law and of fact. Consolidation is therefore appropriate.

The Goldenberg Group has moved to consolidate the Securities Actions with the Derivative Actions. Plaintiffs in the Derivative Actions oppose consolidation, arguing that because the plaintiffs in each type of action have conflicting interests, a single lead plaintiff could not adequately represent both groups.[22] I agree. Lead plaintiff in the Securities Actions could not reasonably be expected to represent adequately the interests of the Derivatives plaintiffs. However, the Derivatives Actions and the Securities Actions will be coordinated for pre-trial purposes.

### B.    Lead Plaintiff

I first reject the Goldenberg Group's argument that groups of

---

[22]    *See* Carfagno's and Broy's Memorandum of Law in Opposition to Motion of Roslyn Goldenberg, Mitchell Goldenberg, Jane Goldenberg, Michael Goldenberg and Lisa Goldenberg to Consolidate All Related Actions, to Be Appointed Lead Plaintiffs, and for Approval of Their Selection of Faruqi & Faruqi, LLP and Marcus & Auerbach, LLC as Lead Counsel at 6. Defendants also oppose consolidation. *See* Response of Defendants to Motion to Consolidate.

investors with a pre-litigation connection should be preferred as lead plaintiffs under the PSLRA. Groups of unrelated investors are acceptable if they otherwise meet the requirements of the PSLRA.

The Burns Group appears to have the largest financial interest in the outcome of the litigation. However, several groups of plaintiffs allege that the Burns Group's choice of December 5, 2006 rather than March 12, 2007 as the start of the Class Period was made in bad faith to ensure that the Burns Group would have the largest loss.[23] Indeed, if March 12, 2007 is chosen as the start date, the Centerline Investor Group has the largest financial interest in the litigation.[24]

At this stage in the litigation, it would be inappropriate for the Court

---

[23]    *See, e.g.,* Louise Levin, Deborah Dechter, Elizabeth F. Newman, and Wai-Lam Li and Pei-Mei Li's Response to Competing Motions for Consolidation, to Appoint Lead Plaintiff, and Approve Selection of Counsel and in Support of the Centerline Investor Group's Motion at 1 ("As a result of the investigation conducted by Movant's counsel, Wolf Popper LLP, Movants believe that Kahn Gauthier Swick, LLC had no basis to extend the class period in the amended complaint filed in Quill, and did so for the sole purpose to increase the Burns Group's losses and chances of being appointed lead plaintiff."); David Garfinkle's Response to Competing Motions for Consolidation, to Appoint Lead Plaintiff and Approve Selection of Lead Counsel at 1 ("Although the Burns Group purports to claim the largest financial interest, the Class Period that it has utilized in calculating its financial interest appears to be improper and inconsistent with the underlying allegations of the complaint.").

[24]    *See Pirelli Armstrong Tire Corp. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004) (quoting *Lax v. First Merch. Acceptance Corp.*, No. 97 Civ. 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)).

9

to determine the earliest possible date on which investors were deceived. For purposes of determining the lead plaintiff, I hold that the proper standard is that which is used to evaluate a motion to dismiss: the standard of plausibility.[25] This standard is appropriate because at this time, just as with a motion to dismiss, the Court must accept the allegations in the Complaint as true as long as the allegations are plausible in light of competing inferences that may be drawn from those same allegations.[26]

Assuming the truth of the facts alleged, Centerline could have formulated its restructuring plan as early as December 5, 2006. But based on the factual allegations as pled, this is not *plausible*. The Burns Group's Complaint cites language from the December 5, 2006 presentation that discusses Centerline's business strategy as it relates to the company's risk management and growth strategy, but it fails to allege any facts whatsoever that would support an inference

---

[25]    *See Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1970 (2007).

[26]    A finding of plausibility at this stage would be preliminary because defendants have not yet had the opportunity to be heard and to argue contrary inferences that can be drawn from the complaints. Further, because this case is governed by the PSLRA, mere plausibility with regard to defendants' fraudulent intent cannot survive a motion to dismiss. Instead, the "inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, — U.S. —, 127 S. Ct. 2499, 2504-05 (2007).

10

that these statements were false when made.[27] Its Complaint states that at all times

during their proposed class period, defendants "were *already* engaged in making

plans to liquidate Centerline's entire mortgage bond portfolio . . . ."[28] But it pleads

no facts that make this allegation plausible.

This is not to say that plaintiffs may never prove that Centerline

violated the federal securities laws earlier than March 12, 2007. It would be

inappropriate at this stage in the litigation to make any determination about the

merits of the claims.[29] However, the appropriate standard here is plausibility, not

possibility.

The Centerline Investor Group is therefore the group with the largest

financial interest in the litigation. As a result, it is entitled to a presumption that it

is the most-qualified lead plaintiff. I further find that its claims are typical of those

---

[27]    The Burns Group argues that even if they have failed to allege that
the December 5, 2006 statements were misleading when made, they might still be
able to demonstrate that Centerline was under a duty to update those statements
prior to March 12, 2007. This is certainly a possibility. But it is a possibility
wholly unsupported by any facts alleged in the complaints.

[28]    Quill Compl. ¶ 37(a).

[29]    *See In re Star Gas Sec. Litig.*, No. 04 Civ. 1766, 2005 WL 818617, at
*7 (D. Conn. 2005) ("[I]t would be premature to limit the plaintiff class [by
limiting the Class Period] at such an early stage of the litigation. The appointed
lead plaintiffs can decide how to frame their amended complaint in terms of an
appropriate class period in their best judgment.").

of the class, its chosen counsel is experienced and qualified to conduct the litigation, there is no evidence of inter-group antagonism that would prevent the Centerline Investor Group from functioning effectively, and the group has sufficient interest in the outcome of the case to ensure vigorous advocacy.

No party has raised sufficient grounds to infer that the Centerline Investor Group would not fairly and adequately protect the interests of the class, nor that it would be subject to unique defenses that would render it unable to represent the class adequately. The Centerline Investor Group is therefore appointed lead plaintiff. I further find that there is no ground to disturb the Centerline Investor Group's choice of counsel, Labaton Sucharow LLP and Berger & Montague, P.C.

## V.   CONCLUSION

The Securities Actions are hereby consolidated for pre-trial and trial purposes. The Goldenbergs' motion to consolidate the Derivative Actions and Securities Actions is denied, but the Derivative Actions and the Securities Actions shall be coordinated for pre-trial purposes. The Centerline Investor Group is appointed lead plaintiff in the Securities Actions. Labaton Sucharow LLP and Berger & Montague, P.C. are appointed Co-Lead Counsel. A status conference is scheduled for May 13, 2008 at 4:30 p.m. in courtroom 15C. The Clerk of the

12

Court is directed to close these motions (documents no. 7, 11, 13, 17, and 19 in

action 08 Civ. 505; document no. 6 in action 08 Civ. 1026; document no. 5 in

action 08 Civ. 1158; document no. 8 in action 08 Civ. 1458; and document no. 5

in action 08 Civ. 1593).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          May 5, 2008

13

## - Appearances -

### For the Centerline Investor Group:

Lawrence A. Sucharow, Esq.
Christopher J. Keller, Esq.
Andrei V. Rado, Esq.
Alan I. Ellman, Esq.
Labaton Sucharow LLP
140 Broadway
New York, New York 10005
(212) 907-0700

Sherrie R. Savett, Esq.
Barbara A. Podell, Esq.
Eric Lechtzin, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
(215) 875-3000

### For the Burns Group:

Bruce D. Bernstein, Esq.
Rebecca Ringey, Esq.
Dreier LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100

Kim E. Miller, Esq.
Kahn Gauthier Swick, LLC
12 East 41st Street, 12th Floor
New York, New York 10017
(212) 696-3730

Lewis Kahn, Esq.
Kahn Gauthier Swick, LLC
Poydras Center
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
(504) 455-1400

### For the Goldenberg Group:

Antonio Vozzolo, Esq.
Richard D. Schwartz, Esq.
Faruqi & Faruqi, LLP
369 Lexington Avenue, 10th Floor
New York, New York 10017
(212) 983-9330

Jacob Goldberg, Esq.
Faruqi & Faruqi, LLP
2600 Philmont Avenue, Suite 324
Huntingdon Valley, Pennsylvania 19006
(215) 914-2460

14

Jonathan Auerbach, Esq.
Jerome M. Marcus, Esq.
400 Greenwood Avenue, Suite 2000
Wyncote, Pennsylvania 19095
(215) 885-2250

**For Defendants:**

Richard A. Rosen, Esq.
Daniel J. Leffell, Esq.
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

Steven Cooper, Esq.
Reed Smith LLP
599 Lexington Avenue, 29th Floor
New York, New York 10022
(212) 205-6027

Jennifer F. Beltrami, Esq.
WolfBlock LLP
250 Park Avenue
New York, New York 10177
(212) 883-4955

15